PAUL F. JAUDEL, APPELLANT, v. OSWALD SCHOELZKE, RESPONDENT.

Submitted March 22, 1919—Decided November 15, 1920.

1. An order of the Circuit Court, quashing a writ of attachment, is such a final judgment as may be removed to the Court of Errors and Appeals for review.

2. Where the legislative act requires proof to be made of the existence of certain facts, for example, as the statute does in cases of attachment, it means competent evidence—such testimony as would be admissible in the trial of the case in a court, and where the affidavit, upon which the order for the attachment is based sets forth conclusions drawn from an assumption of undisclosed facts, the writ will be quashed.

On appeal from the Essex County Circuit Court.

For the appellant, *Fleming & Handford* (*Fred Herrigel, Jr.,* of counsel).

For the respondent, *Charles A. Woodruff*.

The opinion of the court was delivered by

KALISCH, J. Attachment proceedings were instituted in the Essex County Circuit Court by the plaintiff-appellant, against the defendant-respondent, under section 84 of the Practice act, which, *inter alia,* authorizes the issuance of a writ of attachment against the property of any person against whom a writ of summons might issue, upon proof by affidavit or otherwise, that the plaintiff has a cause of action the nature of which he shall specify and that the defendant is not a resident of this state, and that summons cannot be served upon him.

Section 85 of that act (*Comp. Stat., p.* 4077) further provides, that "upon such proof being made, the court, judge or commissioner shall make an order awarding the plaintiff a writ of attachment against the goods and lands * * *

belonging to the defendant in this state,  *  *  *  which order shall prescribe the amount of bond,  *  *  *  such order shall direct that the writ shall issue  *  *  *  in actions in tort for such sum as the officer shall under all the circumstances think proper."

Section 86 (*Comp. Stat., p.* 4077) makes the further provision that upon filing with the clerk of the court out of which the attachment may issue, the order awarding the writ and the proof upon which the order is founded and the bond approved by the court, &c., such clerk shall issue to the sheriff or other officer a writ of attachment for the sum ordered, &c.

The plaintiff herein applied to a Supreme Court commissioner for an order awarding the writ of attachment upon an affidavit which, among other things, contains these averments: "One, Carl Olfson, residing in this state, was authorized by Oswald Schoelzke, the defendant herein, to solicit offers for the sale of certain land and premises situated in the township of South Orange, New Jersey; that on the morning of September 17th, 1919, the said Carl Olfson, on the direction of deponent, sent a telegram to the said Oswald Schoelzke, making an offer of $4,400 for the aforesaid land and premises, and advised that the said Oswald Schoelzke, if he desired to accept said offer, to wire his acceptance direct to deponent; that at eleven thirty-seven A. M. of the same day plaintiff received a telegram from said Oswald Schoelzke accepting said offer; that on September 19th, 1919, said Oswald Schoelzke notified deponent that he would not carry out his said agreement and would not deliver a deed to deponent, and that the said Oswald Schoelzke has ever since defaulted in said agreement, although deponent was at all times ready, willing and able to pay the consideration therefor,  *  *  * and that as a result deponent lost an opportunity to sell said premises at an advance of $1,500 upon the price deponent had agreed to pay, and the value of the said premises is $1,500 in excess of the contract price." Then follows an averment that the defendant has a good cause of action against Oswald Schoelzke and that the latter is not a resident of this state,

but resides in the State of Connecticut, and that a summons cannot be served upon him.

Upon that affidavit, which was the only proof produced by the plaintiff before the Supreme Court commissioner, that officer made an order awarding the writ of attachment for the sum of $1,500, and it was upon that order that the clerk of the court issued the writ of attachment for $3,000.

The Essex County Circuit Court, on motion of defendant's counsel, quashed the writ and set aside the proceedings upon the grounds that the affidavit upon which the order awarding the writ was made was insufficient in substance and defective and did not warrant such order, and that the writ was obtained and issued contrary to law.

From that order the plaintiff has taken an appeal to this court.

As there was a doubt cast upon the legal propriety of the plaintiff to come to this court with an appeal from the Circuit Court instead of going first, by *certiorari,* to the Supreme Court, because of the fact that the underlying ground of the appeal is an order made by the Circuit Court quashing a writ of attachment issued out of that court, we deem it important before considering the subject of the appeal that the doubt referred to should be first removed.

The fundamental question seems to be this: Has the order quashing the writ of attachment the quality of a final judgment? If it has that quality, then it is appealable directly from the Circuit Court to this court. The question as to the quality of an order quashing such a writ is no longer an open one in this state. Mr. Justice Trenchard, speaking for this court in *Hanford* v. *Duchastel,* 87 *N. J. L.* 205 (at *p.* 207), says: "At the outset we remark that it is quite clear that the order quashing the writ of attachment is in effect an order in the nature of a final judgment."

In that case the proceeding was instituted in the Supreme Court and the writ was quashed by Mr. Chief Justice Gummere, and from his order an appeal was taken to this court, where the judgment was affirmed. The case was presumably heard by the Chief Justice sitting for the Supreme Court. No

different legal situation arises out of an order made quashing a writ of attachment by the Supreme Court from that which is created by such an order when made by the Circuit Court. The reason for this is plain, as will appear from the following excerpts from the state constitution.

Article 6, section 5, placitum 2, of the constitution, *inter alia,* declares that the Circuit Court shall have common law jurisdiction concurrent with the Supreme Court, and any final judgment of a Circuit Court may be docketed in the Supreme Court, and shall operate as a judgment obtained in the Supreme Court from the time of such docketing.

Placitum 3 declares: "Final judgments in any Circuit Court may be brought by writ of error into the Supreme Court or directly into the Court of Errors and Appeals."

Thus it is quite obvious that the plain constitutional declaration will not tolerate a differentiation of a final judgment in the Supreme Court from what it is in the Circuit Court, concerning the right of appeal.

In *Defiance Fruit Co.* v. *Fox,* 76 *N. J. L.* 482, Chancellor Pitney (at *p.* 486) said: "But in this state, notably in this court, from an early period this limitation of the common law writ of error has been to some extent departed from, in favor of a more liberal review, and by a long line of cases it has become, with us, established law that the writ of error is not confined to the review of the proceedings in the course of the common law, but extends to decisions rendered in the exercise of the equitable powers of a court of law, or in the course of its statutory or summary jurisdiction, provided they result in a final disposition of the matter and have not rested in the discretion of the court." See *Eames* v. *Stiles,* 31 *Id.* 490; *Knight* v. *Cape May Sand Co.,* 83 *Id.* 597 (at *pp.* 599, 600).

If the present proceedings had been originally instituted in the Supreme Court and an order was made by that tribunal quashing the writ then under the adjudged cases refered to, an appeal to this court would have been the proper procedure. If on the other hand, the Supreme Court refused to quash the writ, then, of course, no appeal would lie, because of the lack of a final judgment, and as we have seen under the com-

mon law and under the constitution a writ of error can only
be sued out after final judgment. If under *Hanford* v.
*Duchastel, supra,* an order quashing a writ of attachment has
the characteristic of a final judgment, when such order is
made by the Supreme Court, so that the same may be removed
by writ of error to this court, it naturally follows that there
can be no reasonable ground on which to distinguish there-
from an order quashing a writ of attachment made by the
Circuit Court which, under an express declaration of the con-
stitution, has *concurrent* common law jurisdiction with the
Supreme Court, and whose final judgments may be removed
by writ of error to either the Supreme Court or this court.

An order quashing a writ of attachment is analogous to
a judgment of nonsuit. The right of appeal, by writ of error,
from such a judgment is well settled. *Rutherford* v. *Fen,*
21 *N. J. L.* 700.

The legal effect of quashing a writ of attachment is that
the plaintiff takes nothing by his writ and the defendant goes
without day, which is the like result of a judgment of nonsuit.
*Tidd Forms* 272. Were it not for a *dictum* in an opinion of
this court in *Barrett Manufacturing Co.* v. *Kilchell,* 84
*N. J. L.* 326 (at *p.* 328), the subject in hand might
be properly dismissed here without further comment. But
the learned author, of that opinion, in speaking of a record
in an attachment case which was originally commenced in the
Supreme Court and was removed by an appeal into this court,
said: "If this record had come from the Circuit Court and
was under review in the Supreme Court, it should have been
brought there by *certiorari. Hisor* v. *Vandiver,* 82 *Id.*
303; *Curtis* v. *Steever,* 36 *Id.* 304. But as pointed out in
Eames *v.* Stiles, this court in reviewing the proceedings of
courts of common law does not act by *certiorari,* but only by
writ of error. This practice was recognized in the early case
of *Rutherford* v. *Fen, supra,* and is too well settled to admit
of question." Neither Curtis *v.* Steever, nor Hisor *v.* Van-
diver, support the view attributed to them by the learned
judge. Both of these cases dealt with the question whether a
denial by the Circuit Court to quash a writ of attachment is

reviewable, by *certiorari*, in the Supreme Court, and that question was answered in the affirmative.

It is quite obvious that a case where there is a refusal to quash a writ of attachment must be controlled by an entirely different legal principle from that applicable to a case where the attachment was quashed, for the very plain reason that in the former case there is lacking a final judgment or an order in the nature of a final judgment which, under the common law and under the constitution of this state, must exist before an appeal will lie from the Circuit either to the Supreme Court or to this court.

It is the constitutional limitation referred to which prevents this court from reviewing an order made before final judgment, in a case at law, on appeal, from either the Supreme Court or Circuit Court, unless such order is in the nature of a final judgment.

The constitutional limitation regarding an appeal from the Circuit Court to the Supreme Court does not deprive the latter tribunal of the exercise of its common law prerogative right to review, by writ of *certiorari*, an order made by the Circuit Court before final judgment, in a proceeding which is not according to the course of the common law. Hence, an order refusing to quash a writ of attachment made by the Circuit Court may be brought for review, by *certiorari*, to the Supreme Court before final judgment. *Hisor* v. *Vandiver*, *supra; Delaney Co.* v. *Freedman*, 93 *N. J. L.* 456; 108 *Atl. Rep.* 435.

The jurisdictional question having been disposed of we are now brought to a consideration of the remaining query raised by the appeal as to the legal propriety of the action of the Circuit Court in quashing the attachment proceedings.

An examination of the affidavit upon which the legality of the order awarding the writ of attachment must rest discloses that the requisite proof to establish the material averments of that deposition was not only not produced before the Supreme Court commissioner who granted the order, but, also, that the averments set forth in the affidavit fail to estab-

lish that the affiant has a legal cause of action against the defendant.

It is too well settled in this state so as to warrant any debate on the subject that where a legislative act requires proof to be made of the existence of certain facts, for example, as the statute does in the present instance, it means competent evidence—such testimony as would be admissible in the trial of the case in a court of justice. "Proof," as was well said by Mr. Justice Garrison, in *Inglis* v. *Schreiner,* 58 *N. J. L.* 120, speaking for the Supreme Court (at page 122), "when used in a legislative enactment, means competent and legal evidence or, in other words, testimony that conforms to the fundamental rules of proof, one of which excludes hearsay evidence, however trustworthy the informant or however implicit may be the deponent's belief in the truth of what he has heard." This clear and concise statement of the law was adopted by Mr. Justice Voorhees, in *Hufty* v. *Wilson,* 78 *Id.* 241. To the same effect is *Hanford* v. *Duchastel, supra* (at *p.* 208).

Now testing the sufficiency of the averments of the affidavit in the case *sub judice* by the legal rule as to the character of the proof required to establish a cause of action under the statute, we find those averments wholly incapable of successfully standing such test. It will suffice the purpose in view to point out a few of those averments, which were essential to establish a *prima facie* case, are devoid of any legal proof. For instance, the affidavit sets forth that one Olfson *was authorized* by Oswald Schoelzke, the defendant, to solicit offers for the sale of certain lands and premises situated in the township of South Orange. It is obvious that this testimony, without any further explanation, is incompetent to prove the relation of principal and agent between Schoelzke and Olfson. If the affiant had obtained the information from Schoelzke the testimony would have been competent, but the affidavit is silent in that regard. The affidavit does not disclose any act, declaration or conduct of the principal and agent so as to give rise to a proper inference that such agency existed in fact. Nor do we think that the statement in the

affidavit, standing alone or with what preceded it, "that Olfson on the direction of deponent sent a telegram to Schoelzke, making an offer of $4,400 for the aforesaid land and premises and advised that the said Schoelzke, if he desired to accept said offer, to wire his acceptance to deponent," furnishes any competent proof of the relation of principal and agent between the defendant and Olfson. On the contrary, the natural inference from that statement would be that Olfson was acting as the agent of the plaintiff, and this situation is especially emphasized by the fact that Schoelzke is advised to send an acceptance of the offer to the plaintiff direct. But the infirmity of the plaintiff's case does not result so much from the lack of competent proof of the relation of principal and agent between Olfson and Schoelzke, the defendant, as it does from the obvious fact that the words of the telegram sent by Olfson for the plaintiff to the defendant constituting the offer made by the plaintiff were not disclosed, so as to enable the commissioner to pass judicially upon the essential question whether there was a binding offer made by plaintiff to purchase the property, and to properly adjudge that the plaintiff has a cause of action. The statement in the affidavit of what the telegram contained, was purely a conclusion of the affiant from undisclosed facts and was incompetent as proof of a valid offer to purchase the premises by the plaintiff of the defendant.

And the same criticism applies with equal force to the statement made in the affidavit, "that at eleven thirty-seven A. M. of the same day plaintiff received a telegram from said Schoelzke accepting said offer." Whether or not the defendant accepted the plaintiff's offer would very much depend upon the verbiage of the Olfson telegram, and the words used by the defendant in reply thereto. All that there was before the commissioner relative to any acceptance by the defendant of the plaintiff's offer was a conclusion of the affiant drawn from an assumption of facts, which facts the affidavit failed to disclose and which conclusion of the affiant as to what those facts established was not competent as evidence of an acceptance of an offer to purchase by the plaintiff.

Without going into further particulars and attributing to the statements of the affidavit their full purport and effect, it is obvious therefrom that there was no enforceable contract entered into between the plaintiff and defendant, whereby the defendant agreed to sell the land and premises to the plaintiff and whereby the plaintiff obligated himself to purchase the same. According to the affidavit it was Olfson who made the offer to purchase and not the plaintiff. The affidavit does not state that Olfson solicited an offer for the property from the plaintiff, nor does it state that plaintiff authorized Olfson to make an offer for the property in his, the plaintiff's, behalf, but the affidavit avers, that Olfson, on the direction of deponent, sent a telegram to the defendant making an offer of $4,400 for the land and premises and advised (that is deponent advised Olfson) that if defendant desired to accept said offer to wire his acceptance to plaintiff. Now the natural meaning of this language is that Olfson made the offer to purchase and not the plaintiff. The plaintiff accordingly assumed no legal obligation to purchase the property. As there is a total absence of proof that the defendant accepted any offer of the plaintiff to purchase the property in question, and of any agreement on part of the defendant to sell the same to the plaintiff, the latter's case must fail.

Having reached the conclusion that the affidavit was insufficient to support an order awarding the writ of attachment, it becomes unnecessary to consider the defects alleged to exist in the order and in the writ.

Judgment is affirmed, with costs.

*For affirmance*—THE CHIEF JUSTICE, SWAYZE, TRENCHARD, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, ACKERSON, JJ. 13.

*For reversal*—None.