27 N.J. Super. 359 (1953)
99 A.2d 434
WHITEMAN FOOD PRODUCTS COMPANY, A CORPORATION. PLAINTIFF-APPELLANT,
v.
PRODOTTI ALIMENTARI, G. ARRIGONI & C., SOCIETA PER AZIONI, A CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued August 3, 1953.
Decided September 22, 1953.
*362 Before Judges BIGELOW, DANIEL J. BRENNAN and HUGHES.
Mr. Saul J. Zucker argued the cause for the appellant (Messrs. Kristeller & Zucker, attorneys).
Mr. Samuel H. Nelson argued the cause for the respondent (Messrs. Sandles & Sandles, attorneys).
The opinion of the court was delivered by HUGHES, J.S.C. (temporarily assigned).
This appeal challenges the propriety of two orders entered by Judge Drewen of the Hudson County Court, the first dated March 20, 1953 quashing a writ of attachment theretofore allowed by another of the learned judges of such court, and the second dated April 1, 1953 refusing to accept additional proofs to support the attachment thus quashed, and on such basis to vacate the order of March 20, 1953.
The focal order for issuance of the attachment writ was entered on February 16, 1953 on the application of plaintiff-appellant (hereinafter called appellant), a corporation of the Commonwealth of Pennsylvania, against goods in New Jersey which had been shipped by the defendant-respondent (hereinafter called respondent), a foreign (Italian) corporation, non-resident in the sense of the attachment statute. Such application was supported by the affidavit, dated February 11, 1953, of Mr. Whiteman, president of appellant, which apparently constituted "* * * proof to the satisfaction of the court, establishing the plaintiff's right to the writ * * *" (former Rule 3:72-1), and resulted in the entry of the order that writ of attachment should issue. The relevant tenor of such affidavit dealt with an alleged contract of purchase of 3,500 barrels of gherkins by appellant of respondent, and respondent's breach by failure of delivery. Respondent moved on several grounds to quash the writ, the prime attack being based upon the alleged deficiencies of such supporting affidavit. It was on the basis of the insufficiency of such affidavit that Judge Drewen quashed the writ, commenting in his opinion that:
*363 "I do not see how anyone could possibly tell upon a basis of evidential proof that there was a contract between these parties or the terms thereof, or any particular in which it can be said to have been breached."
In a supplemental memorandum leading to its order of March 20, 1953, the court referred to a suggestion that to remedy these defects "* * * additional affidavits be submitted under former Rule 3:72-3." In rejecting this proposal the court stated its reasons, inter alia:
"Counsel for the plaintiff suggests that additional affidavits be submitted under Rule 3:72-3. I take it that the submission of affidavits under that rule is within the discretion of the court. There are factors here, in the court's opinion, that definitely militate against the exercise of such discretion in favor of what plaintiff asks.
This writ was issued on February 16; the attachment was made on that day; and the subject of the attachment is a ship's cargo of perishable foodstuffs brought to this port from Italy and discharged at the Holland-American Line docks in Hoboken. Argument under defendant's attack upon the writ was initiated on Monday, March 9, the two points urged by defendant on that day having been decided against the defendant. On defendant's application, the argument was continued over for further hearing on March 13, and it was at the conclusion of that hearing that the court dictated its letter of opinion of the same date, already referred to. Today is March 18, and no affidavit has been proposed to the court as a subject of additional submission to the papers already in.
I am bound to observe another feature of the case which I think puts the court upon notice, so to speak. The original plaintiff here is the consignee of the shipment that has been attached. * * *
With regard to the rule invoked respecting the application to submit further affidavits, it is the court's interpretation of that rule that it is not intended, as already expressed in the opinion letter, to permit the making of a case de novo where a writ of attachment has already been issued on defective papers, an attachment made under the writ, and goods held for so long a period as a month or more.
Moreover, if the court were to allow additional affidavits, it could in reason be only upon the assumption that such affidavits would make good the establishment of a case, and there is nothing to justify any such attitude of mind.
The requirements of the rule with respect to the character of affidavits is such as to admit of no mistake or misunderstanding. It follows that if one is not required to establish the right which is presupposed by the attachment provision of the rules, then a writ of attachment may be sought out in almost any and every legally inadequate situation, and oppression and abuse result."
*364 Later, however, a much more detailed affidavit with a formidable file of exhibits was tendered the same judge who had quashed the writ of attachment and he entered an order to show cause which made possible further argument in the matter, at the conclusion of which such learned judge rejected such proofs and refused to vacate his previous order quashing the writ, again purportedly in the exercise of his discretion in the premises and again, from an excess of fairness to the litigants, documenting his reasons, in part, as follows:
"The writ of attachment in this case as originally ordered by * * * this court was, after argument diligently prepared and expounded, quashed in Part 3 of the court. That was done a week or more ago. I think it is important to keep that circumstance in mind when we consider plaintiff's reliance on the provision of the rule which states that `In addition to other powers of amendment, the court may, at any stage of the proceedings, permit submission of additional affidavits.' There is no longer any stage of the proceedings in which the writ was issued; and what is rather nakedly presented to the court's mind is what I regard as a very substantial question: How long can a vacated writ be regarded as still in effect and subject to supplemental proof?
I am fully aware of the rule and of the spirit of our law which bids us regard the attachment procedure as one that is to be liberally construed, and that the attachment law itself is to be liberally construed as a remedial law for the protection of resident and non-resident claimants. What must be soberly borne in mind, in my opinion, is that liberal construction has its own discipline, its own rules and its own necessities; that if it were not subjected to these rules and discipline and necessities, it would soon cease to be liberal and become as a result a chaos and, as chaos always does, would introduce some form or other of abuse and oppression.
It is certainly not within any realm of liberal construction to regard a writ of attachment vacated a week or more ago as subject to what counsel now says would suffice to establish the right to the writ in the first instance or would have established that right. This is not an application for a new writ. If it were, the considerations called for would of necessity be entirely different. The proceeding here is to supplement the proofs that were required upon the application for the writ in the first instance. Of course, we are bound to think of the question already asked, that which attempts to find an answer to the query as to how long a vacated writ is still in force in order to be regarded as a basis for continued proceedings.

* * * * * * * *
If the exactions of the rule of court that stipulates the evidential character of affidavits are referred to as procedural technicalities in *365 the reference already mentioned, I cannot agree that such is their nature. The rule of court or a principle of law which requires that proof be evidentially made is not a procedural technicality. It is matter of prime substance, in my opinion."
Accordingly, it is basically argued here that the writ was improperly quashed by the first order and, secondly, that the court abused its discretion in rejecting the supplemental proofs offered for its legal resuscitation. On the first point we agree that the affidavit was insufficient to support the order for issuance of the writ. Its copious references to the "contract" rest upon and are limited factually by two documents, incorporated by reference, which negate rather than support the concept of a legal contract. The offer to buy, dated April 2, 1952, insisted that "The below prices guaranteed against market decline at time of shipment." To this respondent's rejoinder was "* * * We definitely do not accept `market decline.'" No meeting of the minds as to this important feature was indicated by the affidavit.
Again, the intending seller made guarded reference to its ability to perform and assumed that the buyer was "* * * well aware that it is impossible to say in April what the Good Lord is intended (sic) to do in July and August with the weather in Italy." It was firm in hinging its commitment to such eventuality:
"If, however, there is a short crop we most decidedly don't want to be held responsible and for this reason, please tell Messrs. Whiteman that we accept the contract exclusively `provided crop' and if they feel they cannot accept this clause much to our regret, the contract has to be cancelled."
The buyer's reaction to this crucial proviso was not made evident in the affidavit, but trails off into the uncertainty reflected therein of the constant references to "contract," "recognized" and "confirmed" by the seller and like references. In the supplemental affidavit offered after the quashing of the writ, Mr. Whiteman averred that he had acceded to these new conditions verbally, but nothing of that *366 appeared in the proofs upon which the writ was issued and later quashed. A reply to an offer, although purporting to accept it, which adds qualifications or conditions, is not an acceptance but a counter-offer (Larsen & Fish, Inc. v. Schultz, 5 N.J. Super. 403 (App. Div. 1949)), and if the seller's obligation to perform was thus contingent on the existence of an available crop, any breach of contract would depend upon the sufficiency of such crop, which was nowhere shown in the affidavit presented in support of the application for the writ. Thus the affidavit tendered negated not only the fact of a legal contract, but as well failed to support any allegation of breach thereof.
Former Rule 3:72-1, supra, required the court to issue the writ upon proof to its satisfaction "* * * establishing the plaintiff's right to the writ." That right basically depended upon the existence of a cause of action, together with other elements delineated by statute. N.J.S. 2A:26-2. These proofs may be made by affidavit. Former Rules 3:72-1, supra, and 3:43-3. A prima facie case is all that is required to be made out by the affidavits; plenary proof is neither required nor practical since a writ of attachment must issue quickly if it is to serve its purpose. Mueller v. Seaboard Commercial Corp., 5 N.J. 28 (1950).
But such affidavits must contain competent factual evidence based upon personal knowledge (former Rule 3:43-3, supra) and this is the "proof" contemplated by the rule. Jaudel v. Schoelzke, 95 N.J.L. 171 (E. & A. 1920). The rules of evidence are equally applicable to affidavits as to oral testimony. Mueller v. Seaboard Commercial Corp., supra. The elimination of special pleading with its verbosity and technicalities has not resulted in the abandonment of the concept of stating a cause of action. Grobart v. Society for Establishing Useful Manufacturers, 2 N.J. 136 (1949).
The proofs submitted initially, therefore, did not justify the issuance of the writ and it was rightly quashed by the order challenged. Although we are mindful of the liberal construction called for by the statute (N.J.S. 2A:26-1), and no less encouraged by the rules of court *367 where required by the interest of substantial justice, it is nevertheless true that attachment is a statutory proceeding, not according to the course of the common law, which sanctions the ex parte taking of property in invitum; and on well-settled principles, the statute should not be enlarged beyond the plain meaning and understanding of its terms. Russell v. Fred G. Pohl Co., 7 N.J. 32 (1951). To say that an attachment would be justified on the basis of less than prima facie proof of a cause of action is the same as saying that it may be issued without proof of the right thereto, and the abuse and oppression which such arbitrary process would encourage is evident.
Having determined that the order of March 20, 1953, quashing the writ, was valid, we are required to consider whether the action of the court in refusing to accept more detailed proofs offered later and to vacate its order of March 20, 1953 upon their basis was an abuse of its discretion. Former Rule 3:72-3, supra, relates to proof in attachment actions and provides "* * * In addition to other powers of amendment the court may, at any stage of the proceedings, permit submission of additional affidavits. * * *" Others of the former rules deal with liberality in the field of amendment (Rules 3:15-1, 2, 3), the relaxation in the stringency of the rules (Rule 3:1-2), the revision and vacating of a judgment (Rules 3:59-1, 3:60-2), and the like. All betoken the subjection of form to substantial justice, and this indeed is the theme and pattern of the modern rules of court. Equitable principles are not without force in administering this type of relief (Wilford v. Sigmund Eisner Co., 13 N.J. Super. 27 (App. Div. 1951); Spencer v. Steel, 23 N.J. Super. 504 (App. Div. 1952)), and the decision is within the area of judicial discretion too often defined in the cases to require repetition here. Smith v. Smith, 17 N.J. Super. 128 (App. Div. 1951); Amo v. Genovese, 17 N.J. Super. 109 (App. Div. 1951), certiorari denied 9 N.J. 181 (1952). The appellate court does not interfere with the exercise of that discretion unless clearly and manifestly erroneous, constituting an abuse thereof. Smith v. Smith, *368 supra. The crucial question is the doing of justice and this is not a new standard, for very early in our law judges pondered that very question thus:  "But the inquiry always is, Has injustice been done? has the party been injured? * * *" Ogden v. Gibbons, 5 N.J.L. 598, 612 (Sup. Ct. 1819). Essentially, then, it is the manifest denial of justice to a party that constitutes an abuse of discretion, and we find none here. All that was later tendered the court in the supplemental proofs was available from the beginning. No factor of equitable grievance appears to us to have been involved. The easy reinstatement of the writ (if legally possible) on proofs that had always been available (even considering the liberal policy afforded by rule and statute) would encourage a downgrading in the practice which would lead very soon to the abuse of the drastic and ex parte formula of the attachment remedy, and promote the very injustice which the rules would discourage.
Moreover, analysis of the supplemental proofs shows that any contract existent was predicated on the availability of a sufficient crop to permit delivery, and no substantial evidence of the sufficiency of crop is shown. The optimistic and possibly false statement of a representative of the respondent with regard to the allocation of the order is not to be mistaken for a factually affirmative showing that the conditions upon which delivery would be required under the contract in fact existed. The purported reason for nondelivery of the bulk of the commodity thus ordered was the failure of the current crop and, in our view, not even the supplemental affidavit proofs negated this proposition of fact. Hence we determine that the supplemental proofs offered were in themselves insufficient to support the writ of attachment had they been a part of the original application therefor.
We further determine that any failure of the respondent to cross-examine the plaintiff's affiant on the merits thus deficiently treated in the original affidavit did not amount on any theory of waiver to the supplying of the missing elements. We further discard as without substance *369 the point made on this appeal that it was improper on the part of Judge Drewen to vacate the order for the attachment, quashing the writ based thereon, of another of the learned judges of the Hudson County Court. The proposition is tendered that both judges had concurrent jurisdiction and that a judge of coordinate authority was not at liberty to interfere with the original action taken. We think the appellant erroneously overlooks that both of the actions were those of the Hudson County Court. We have no doubt that if, as we determine, the order for the writ of attachment where improvidently entered is subject to a motion to dismiss or vacate it, such action may be taken by any judge of the court to whom the application is made. We confine this determination to the limits of this case, however, applying it only to instances where writ of attachment is authorized by an order entered on proofs submitted ex parte to the court. We believe that great injustice would accrue if the rule denied the court the authority to review soberly on the basis of a wider field of evidence the sufficiency of the ex parte proofs upon which its action in ordering the writ of attachment was based.
Consequently, we determine that there was no impropriety in the action taken by the Hudson County Court in the entry of either order from which appeal is taken and, accordingly, we affirm such judgments.